UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EAST RAMAPO CENTRAL SCHOOL DISTRICT,

Plaintiff,

-against-

KREYCO, INC. d/b/a LANGUAGE LEARNING NETWORK,

Defendant.

**PROPOSED ESI PROTOCOL**

Case No.: 7:25-cv-003319

**PROTOCOL FOR THE DISCLOSURE, PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

Plaintiff and Defendant (collectively "Parties") hereby agree to the following protocol for the production[1] of documents and electronically stored information ("ESI") (collectively, "Discoverable Information") in Plaintiff's and Defendant's possession and which is responsive to formal discovery demands. This protocol has the objective of facilitating the just and efficient completion of discovery of ESI and to promote, whenever possible, the early resolution of disputes regarding the discovery of ESI without Court intervention. Nothing in this protocol shall limit a Party's right to seek or object to discovery, or to designate documents or ESI as unresponsive or privileged, as set out in the FRCP and Local Civil Rules .

## I. GENERAL AGREEMENTS

**1.** **Scope of Discovery**. The standards, limits and scope of ESI discovery shall be governed by the Federal Rules of Civil Procedure ("FRCP"). The Parties agree to meet and confer in good faith with regard to any discovery disputes, and any dispute the Parties cannot resolve amicably shall be resolved by the Court. Nothing in this ESI and Discovery Protocol shall be deemed as a waiver of the right of any Party to object to any Request for Production, Interrogatory, or other discovery request.

**2.** **No Designation of Discovery Requests**. Productions of ESI in the reasonably usable form set out in this protocol need not include any reference to the requests to which a document or ESI may be responsive, except as may be required by the FRCP.

**3.** **Inadvertent Production**. The inadvertent production of any material constituting or containing attorney-client privileged information or work-product, or constituting or containing information protected by applicable privacy laws or regulations, shall be governed by FRCP and/or

[1] "Production" or "Produced" includes any exchange of documents or electronically stored information between the Parties.

any stipulation entered into by the Parties and So-Ordered by the Court. No Party shall be deemed to have waived its right to assert the attorney-client privilege and/or attorney work-product privilege if privileged materials are inadvertently disclosed despite the Parties' exercise of a reasonable standard of care with respect to the production of such materials. Upon discovery by any Party of the inadvertent disclosure of materials protected by privilege, that Party shall promptly notify the other counsel in writing of the disclosure, identify the document that contains such materials and immediately take steps to preclude further disclosure. In such an event, the Party receiving the privileged materials produced will return or destroy all copies of the identified materials and treat the privileged materials as if they had been initially excluded from production.

## II. FORM OF ESI PRODUCTION

**1.** **Production In Reasonably Usable Form**. The Parties shall produce ESI in connection with this protocol in reasonably usable form. Except as stated in paragraph II.2 below or as agreed hereafter by the Parties, such reasonably usable form in connection with this protocol shall be the single-page, TIFF-image format with extracted or OCR text and associated metadata as set out in Attachment A, which is incorporated in full in this protocol. If the receiving Party seeks production in native format of specifically-identified ESI produced originally in TIFF-image form, the producing Party shall respond reasonably and in good faith to any such request. The Parties may produce documents in native format in lieu of producing documents pursuant to the format set forth in Attachment A.

**2.** **Documents Subject To Production In Native Format**. Electronic spreadsheets (e.g., Excel), electronic presentations (e.g., PowerPoint), desktop databases (e.g., Access) and audio/video multimedia files that have been identified as responsive shall be produced in native format, as well as other documents that cannot be rendered as TIFF images.

**3.** **Deduplication**. A Party is only required to produce a single copy of a responsive document, and a Party should de-duplicate responsive ESI across custodians, provided, however, that all custodians who sent, received or were copied (including blind copied) on such email exchange are identifiable. Each Party should also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails, and produce only the most complete iteration of an email chain. Any de-duplication tool used by a Party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more complete email.

## III. SEARCH OF ESI SYSTEMS

**1.** The Parties shall use reasonable search terms, custodians, file types and date ranges that will apply to the following ESI systems identified by each Party:

i. corporate email systems including all files and folders contained therein, including, without limitation, inbox, outbox, deleted, trash and draft folders, and the fields "TO," "FROM," "CC," "RE" and the body,

ii. hard drives and network share drives,

**2.** The agreed upon individuals identified as Document Custodians are set forth in Attachment B.

**3.** Nothing in this agreement shall limit either Defendant's or Plaintiff's right to seek additional custodians and/or keywords to be applied to the ESI and Discovery Protocol at any point during discovery. The Parties shall meet and confer in good faith on any such requests before seeking Court intervention.

## IV. PERSONAL AND CUSTODIAL ESI COLLECTION

Nothing in this Section IV is intended to limit the obligations or expand the obligations of Defendant, Plaintiff, or the Document Custodians in Attachment B to search and produce documents responsive to discovery requests or the obligations to search emails as described in Sections II and III.

.

i. g:

1. Email: Unless the Party establishes good cause to the contrary, the presumption is that the Parties will collect all emails sent to or received by a Document Custodian during the relevant time period.

A. 2. Cloud-based ESI: To the extent a Document Custodian made any use of cloud-based document storage services (such as DropBox) for work-related purposes, the Parties will obtain such information and produce responsive information provided it is in the control of that Party.

**3. Other Accounts**. To the extent there are additional sources of ESI that may contain documents and/or information responsive to a discovery request not specifically referenced herein, the producing Party shall have an obligation to thoroughly and diligently search such sources for responsive ESI. If a source of potentially responsive ESI is too voluminous and/or overly burdensome to search, the Parties shall meet and confer and attempt to devise a search term or other protocol and attempt to ease the volume and/or burden on the producing Party.

Dated: August 14, 2025

**BOND, SCHOENECK & KING, PLLC** **ACESS TO JUSTICE PROJECT**

By: ______________________________
John F. McKay, III
Barbara Marissa Maisto
68 S Service Road
Melville, NY 11747
Telephone: (516) 267-6342
jmckay@bsk.com
bmaisto@bsk.com

*Counsel for Plaintiff*

By: ______________________________
Melissa J. Hordichuk
P.O. Box 680783
Charlotte, N.C. 28216
(704) 727-2997
Melissa.hordichuk@acessjustice.org
-and-
James Graber
Rupp Pfalzgraf
1600 Liberty Building
424 Main Street
Buffalo, New York 14202
(716) 854-3400 x216
graber@ruppfalzgraf.com

*Counsel for Defendant*

**ATTACHMENT A**

A.1. Image Files. Files produced in *.tif image format will be single page black and white *.tif files at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Each *.tif file will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

*be consistent across the production;*

*contain no special characters; and*

*be numerically sequential within a given file.*

Bates numbers should be a combination of an alpha prefix along with an 8 digit number (e.g. ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2. File Text. Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

A.3. Word Processing Files. Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in the above format with tracked changes and comments showing.

A.4. Presentation Files. To the extent that presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif image format, such *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

A.5. Spreadsheet or Worksheet Files. To the extent that spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in *.tif image format, such *.tif images will display hidden rows, columns, and worksheets, if any, in such files.

A.6. Parent-Child Relationships. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.7. Dynamic Fields. Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

A.8. English Language. To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

A.9. Embedded Objects. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.

A.10. Compressed Files. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.11. Encrypted Files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted.

A.12. Scanned Hardcopy Documents

*In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).*

*If a producing Party is requested, and agrees, to provide OCR text for scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.*

*In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.*

A.13. Production Numbering.

In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If

a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.14. Data and Image Load Files.

*__Load Files Required__. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.*

*__Load File Formats__.*

**i. Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.**

**ii. Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.**

**iii. Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.**

*__Fields to be Included in Data Load File__. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, including the European Data Privacy Regulation, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions. The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.*

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |

| | | | | |
|---|---|---|---|---|
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| CUSTODIAN(S) | Smith, John | Yes | Yes | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
| NATIVEFILE | Natives\001\001\ABC 00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |

| | | | | |
|---|---|---|---|---|
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to EST |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format)(If available) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to EST |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| Redacted Doc | | | | Indicates document has been redacted |

A.15. Files Produced in Native Format. Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, “ABC00000002_Confidential.” For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation and stating “File Provided Natively.” To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

A.16. Production Media. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the producing Party, and the following information: Volume name, production range(s), and date of delivery.

**ATTACHMENT B**

NOTE: All primary and secondary search terms listed will be searched in conjunction with each other in the specified custodians' records for the specified time frames.